UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PNG TELECOMMUNICATIONS, INC.
D/B/A POWERNET GLOBAL
COMMUNICATIONS, an Ohio
Corporation,

          NO. CIV. S-10-1164 FCD/EFB

       Plaintiff,

  v.                 MEMORANDUM AND ORDER

PAC-WEST TELECOMM, INC., a
California Corporation,

       Defendant.

_____/

----oo0oo----

    This matter is before the court on the motion of defendant
Pac-West Telecomm, Inc. ("Pac-West" or "defendant") to dismiss
plaintiff PNG Telecommunications, Inc.'s ("PNG" or "plaintiff")
complaint pursuant to Federal Rules of Civil Procedure 12(b)(1)
and 12(b)(6).  In connection with its motion, defendant also
requests that the court take judicial notice of several
documents.  Plaintiff opposes defendant's motion to dismiss.

1

1  The court heard oral argument on the motion on August 6, 2010.

2  For the reasons set forth below, defendant's motion is DENIED

3  insofar as the court finds that it has subject matter

4  jurisdiction over the case.  However, prudential considerations

5  lead the court to stay the case while the parties present the

6  issues raised herein to the California Public Utilities

7  Commission ("CPUC").

8                          **BACKGROUND**

9      PNG, an Ohio corporation, entered into a Master Services

10  Agreement (the "MSA") with Pac-West, a California corporation and

11  authorized carrier of local exchange and interexchange

12  telecommunications services within California and other states.

13  (Compl., filed May 11, 2010, ¶¶ 4-6.)  Pursuant to the MSA, Pac-

14  West agreed to provide PNG various inbound and outbound

15  interstate and intrastate telecommunications services, including

16  Internet access and services.  (Id. ¶ 6.)  The rates Pac-West

17  would charge PNG for these services were set forth in rate

18  declarations that were periodically amended under the terms and

19  conditions of the MSA.  (Id. ¶¶ 6-7.)

20      PNG alleges from September 1, 2008 through March 1, 2009,

21  Pac-West charged PNG an amount in excess of the rates dictated by

22  the applicable rate declarations.  (Id. ¶ 8.)  PNG was unaware of

23  these excess charges until March 2009 and paid the amounts

24  invoiced by Pac-West.  (Id. ¶ 9.)  As a result, PNG alleges that

25  it overpaid Pac-West by $489,668.74.  (Id.)  In April 2009, PNG

26  notified Pac-West of the overpayments and requested a

27  reimbursement or credit.  (Id. ¶ 11.)  Pac-West issued a credit

28  in favor of PNG in the amount of $208,044.81, but refused to

1 reimburse PNG or credit its account for the remainder of the

2 alleged overpayment.  (Id. ¶¶ 11-12.)

3      PNG filed its complaint on May 11, 2010, asserting seven

4 claims for relief: (1) violation of the Federal

5 Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.*;

6 (2) breach of contract; (3) promissory estoppel; (4) unjust

7 enrichment; (5) conversion; (6) common counts--money paid by

8 mistake; and (7) declaratory relief.

9 **STANDARDS**

10 **I.   Judicial Notice**

11      In ruling upon a motion to dismiss, the court may consider

12 matters which may be judicially noticed pursuant to Federal Rule

13 of Evidence 201.  See Mir v. Little Co. of Mary Hosp., 844 F.2d

14 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of

15 U.S., Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).  Rule 201

16 permits a court to take judicial notice of an adjudicative fact

17 "not subject to reasonable dispute" because the fact is either

18 "(1) generally known within the territorial jurisdiction of the

19 trial court or (2) capable of accurate and ready determination by

20 resort to sources whose accuracy cannot reasonably be

21 questioned."  Fed. R. Evid. 201(b).  The court can take judicial

22 notice of matters of public record, such as pleadings in another

23 action and records and reports of administrative bodies.  See

24 Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988).

25      "Even if a document is not attached to a complaint, it may

26 be incorporated by reference into a complaint if the plaintiff

27 refers extensively to the document or the document forms the

28 basis of the plaintiff's claim."  United States v. Ritchie, 342

3

1 F.3d 903, 908 (9th Cir. 2003).  "The defendant may offer such a

2 document, and the district court may treat such a document as

3 part of the complaint, and thus may assume that its contents are

4 true for purposes of a motion to dismiss under Rule 12(b)(6)."

5 Id.  The policy concern underlying the rule is to prevent

6 plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately

7 omitting references to documents upon which their claims are

8 based."  Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998),

9 *superceded by statute on other grounds as recognized in* Abrego

10 Abrego v. Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006).

11 **II.   Rule 12(b)(1)**

12      Under Rule 12(b)(1) of the Federal Rules of Civil Procedure,

13 a party may by motion raise the defense that the court lacks

14 jurisdiction over the subject matter of a claim.  Fed. R. Civ. P.

15 12(b)(1).  It is well established that the party seeking to

16 invoke the jurisdiction of the federal court bears the burden of

17 establishing the court's subject matter jurisdiction.  Scott v.

18 Breeland, 792 F.2d 925, 927 (9th Cir. 1986).

19      On a motion to dismiss pursuant to Rule 12(b)(1), the

20 standards the court is to apply vary according to the nature of

21 the jurisdictional challenge.  A motion to dismiss for lack of

22 subject matter jurisdiction may either attack the allegations of

23 jurisdiction contained in the complaint as insufficient on their

24 face to demonstrate the existence of jurisdiction (a "facial

25 attack") or may be made as a "speaking motion" attacking the

26 existence of subject matter jurisdiction in fact (a "factual

27 attack").  Thornhill Publ'g Co. v. General Tel. & Elec. Corp.,

28 594 F.2d 730, 733 (9th Cir. 1979); Mortensen v. First Fed. Sav. &

4

1  Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

2       If the 12(b)(1) motion constitutes a facial attack, the

3  court must consider the factual allegations of the complaint to

4  be true.  Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir.

5  1981); Mortensen, 549 F.2d at 891.  If the motion constitutes a

6  factual attack, however, "no presumptive truthfulness attaches to

7  plaintiff's allegations, and the existence of disputed material

8  facts will not preclude the trial court from evaluating for

9  itself the merits of jurisdictional claims."  Thornhill, 594 F.2d

10 at 733 (quoting Mortensen, 549 F.2d at 891).

11      In situations "[w]here a jurisdictional issue is separable

12 from the merits of a case," the court "may consider the evidence

13 presented with respect to the jurisdictional issue and rule on

14 that issue, resolving factual disputes if necessary."  Thornhill,

15 594 F.2d at 733.  If, however,

16              the jurisdictional issue and substantive
                issues are so intertwined that the question
17              of jurisdiction is dependent on the
                resolution of factual issues going to the
18              merits, the jurisdictional determination
                should await a determination of the relevant
19              facts on either a motion going to the merits
                or at trial.
20
   Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).
21
   In ruling on a jurisdictional motion in which factual issues also
22
   go to the merits, the court should apply the standard used to
23
   determine motions for summary judgment brought pursuant to
24
   Federal Rule of Civil Procedure 56.  Id.
25
                              **ANALYSIS**
26
        Pac-West moves to dismiss the complaint pursuant to Rule
27
   12(b)(1) for lack of subject matter jurisdiction and Rule
28

                                   5

1   12(b)(6) for failure to state a claim upon which relief can be

2   granted.  (Def.'s Mot. to Dismiss, filed June 10, 2010, at 2.)

3   Regarding Rule 12(b)(1), Pac-West argues that:  (1) the court

4   lacks subject matter jurisdiction because plaintiff's claims are

5   subject to the exclusive original jurisdiction of the CPUC; (2)

6   the court should decline to exercise jurisdiction under the

7   doctrine of primary jurisdiction; and (3) the court should

8   decline to exercise jurisdiction under abstention doctrines.

9   (Id.)  Because the court finds that prudential considerations

10  favor deferring this case until the CPUC has passed on the issues

11  raised herein, and therefore stays this case, the court does not

12  reach Pac-West's abstention or Rule 12(b)(6) arguments.

13  **I.   Subject Matter Jurisdiction**

14       Pac-West asserts that the MSA constitutes an

15  "interconnection agreement" implementing obligations it has to

16  PNG under 47 U.S.C. § 251(a)(1) and § 251(b)(1).  (Def.'s Mem. P.

17  & A. Supp. Mot. to Dismiss ("Def's. Mem."), filed June 10, 2010,

18  at 2.)  Pac-West contends that under the regulatory scheme of 47

19  U.S.C. §§ 251 and 252, disputes pertaining to interconnection

20  agreements are subject to the exclusive original jurisdiction of

21  the applicable state commission--in this case, the CPUC.  (Def's.

22  Mem. at 2.)  Thus, Pac-West argues, the court lacks jurisdiction

23  because PNG has not first brought a claim to the CPUC.  (Id. at

24  6.)  Pac-West has attached a copy of the MSA to its motion.

25  (Def's. Mem., Attachment A.)  Because PNG relies on the MSA as

26  the basis of all of its claims, the court treats the MSA as part

27  ///

28  ///

6

1 of the complaint.  See Ritchie, 342 F.3d at 908.[1]

2      In addition, Pac-West has itself brought a related complaint

3 against PNG with the CPUC, filed May 11, 2010.  (Def.'s Mem. at 2

4 (CPUC Case No. 10-05-011).)  An administrative law judge has

5 scheduled a pre-hearing conference in that case for August 27,

6 2010.  (Def.'s Reply, filed July 30, 2010, at 3.)  Pac-West has

7 filed a request for judicial notice of several documents,

8 including Pac-West's complaint filed with the CPUC (Def.'s

9 Request for Judicial Notice ("RFJN"), Ex. C) and an

10 Administrative Law Judge's Ruling Extending Time for Filing of

11 Answer and Scheduling Pre-Hearing Conference (Def.'s Second

12 Request Judicial Notice ("Second RFJN"), Ex. J).  The court takes

13 judicial notice of the these documents as records of an

14 administrative agency.  See Emrich, 846 F.2d at 1198.

15      The Telecommunications Act of 1996 was enacted "to promote

16 competition and reduce regulation in order to secure lower prices

17 and higher quality services for American telecommunications

18 consumers and encourage the rapid deployment of new

19 telecommunications technologies."  Preamble, Telecommunications

20 Act of 1996, Pub. L. No. 104-404, 110 Stat. 56 (1996).  Sections

21 251 and 252 of the Act concern the obligations of different kinds

22 of telecommunications carriers, including "local exchange

23 carriers" ("LECs") and "incumbent local exchange carriers"

24 ("ILECs").  47 U.S.C. §§ 251, 252.  A local exchange carrier is

25 defined as "any person that is engaged in the provision of

26 ───────────────────

27      [1]      Because the contents of the MSA are also relevant to
Pac-West's factual attack on the court's jurisdiction, the court
may also consider the MSA on that basis.  See Thornhill, 594 F.2d
28 at 733.

1  telephone exchange service or exchange access."   47 U.S.C.

2  § 153(26).   Incumbent local exchange carriers are "companies that

3  traditionally provide local phone service."  Core Communications,

4  Inc. v. Verizon Penn., Inc., 493 F.3d 333, 335 (3d Cir. 2007).

5  The general duties of telecommunications carriers include "to

6  interconnect directly or indirectly with the facilities and

7  equipment of other telecommunications carriers."   47 U.S.C.

8  § 251(a)(1).   LECs are additionally subject, *inter alia*, to

9  "[t]he duty not to prohibit, and not to impose unreasonable or

10  discriminatory conditions or limitations on, the resale of

11  [their] telecommunications services."   Id. § 251(b)(1).

12      The Act imposes additional obligations on ILECs, which must

13  "provide 'interconnection' to newer local exchange carriers."

14  W. Radio Servs. Co. v. Quest Corp., 530 F.3d 1186, 1190 (9th Cir.

15  2008).   "Interconnection allows customers of one [local exchange

16  carrier] to call the customers of another, with the calling

17  party's [local exchange carrier] . . ., transporting the call to

18  the connection point, where the called party's [local exchange

19  carrier] . . . takes over and transports the call to its end

20  point."   Id. (citing Verizon Cal., Inc. v. Peevey, 462 F.3d 1142,

21  1146 (9th Cir. 2006)) (alteration and ellipses in original).   An

22  ILEC has the duty to negotiate an interconnection agreement with

23  a requesting carrier to provide "for the transmission and routing

24  of telephone exchange service and exchange access" according to

25  "rates, terms, and conditions that are just, reasonable, and

26  nondiscriminatory, in accordance with the terms and conditions of

27  the agreement" and the requirements of the Act.   47 U.S.C.

28  § 251(c)(1), § 251(c)(2)(A),(D).

1    Section 252 establishes a procedural framework for

2  negotiation of § 251 agreements involving ILECs.  An ILEC and a

3  requesting carrier may conduct voluntary negotiations and enter

4  an interconnection agreement.  Id. § 252(a)(1).  During

5  negotiations, either party may ask the applicable state

6  commission with regulatory jurisdiction over telecommunications

7  carriers "to participate in the negotiation and to mediate any

8  differences."  See 47 U.S.C. §§ 153(41), 252(a)(2).  Either party

9  may also petition the state commission for compulsory arbitration

10 regarding an interconnection agreement.  Id. § 252(b)(1).  "Once

11 an interconnection agreement has been adopted either by

12 negotiation or after compulsory arbitration, it must 'be

13 submitted for approval' to the state commission, which must

14 either 'approve or reject the agreement.'"  W. Radio, 530 F.3d at

15 1190-91 (quoting § 252(e)(1)).  The Act further provides that

16 "[i]n any case in which a State commission makes a determination

17 under this section, any party aggrieved by such determination may

18 bring an action in the appropriate Federal district court to

19 determine whether the agreement or statement" meets the

20 requirements of §§ 251 and 252.  47 U.S.C. § 252(e)(6).

21    Here, PNG disputes Pac-West's contention that the MSA is an

22 interconnection agreement negotiated pursuant to § 251, instead

23 characterizing the MSA as merely a "services contract," and this

24 case as "a straight-forward breach of contract dispute that

25 happens to involve two competitive local exchange carriers."

26 (Pl.'s Opp'n, filed July 23, 2010, at 2.)  Because, as set forth

27 below, the court finds that prudential considerations support

28 deference to the CPUC, the court need not decide at this stage in

1   the litigation whether the MSA is an interconnection agreement.[2]

2   However, even if the MSA were an interconnection agreement, the

3   express terms of 47 U.S.C. §§ 251 and 252 would not preclude the

4   court from exercising original jurisdiction.  See Core

5   Communications, 493 F.3d at 340 ("the Act is simply silent as to

6   the procedure for post-formation disputes.").

7        Furthermore, contrary to defendant's assertions, while the

8   case law it cites to the court suggests that deference to the

9   CPUC may be appropriate, these precedents do not establish that a

10  dispute involving an interconnection agreement belongs to the

11  *exclusive* original jurisdiction of the applicable state

12  commission.  Defendant relies on Core Communications, in which

13  the Third Circuit affirmed a district court's holding requiring

14  an LEC to exhaust its administrative remedies by bringing a claim

15  against an ILEC for breach of an interconnection agreement to the

16  state commission that had approved the agreement before

17  litigating the matter in federal court.  493 F.3d at 344.

18  Defendant also relies on an unpublished California Court of

19  Appeal decision citing, in dicta, Core Communications on this

20  issue.  See Cox California Telecom, LLC v. Global Naps

21  California, Inc., No. A124213, 2009 WL 3298158, *5 (Cal. App.

22  Oct. 14, 2009).  Neither of these non-binding cases assert much

23

24        [2]   The court observes that while plaintiff's counsel has
    asserted in the opposition and at oral argument that the MSA is
    not an interconnection agreement, a Joint Status Report, filed
25  July 12, 2010, stated that the parties "*entered into an
    interconnection agreement* known as a Master Services Agreement"
26  (emphasis added).  This inconsistency strengthens defendant's
    contention that the CPUC is best situated to address in the first
27  instance the complex and technical issues raised by this case,
    including whether or not the MSA is properly characterized as an
28  interconnection agreement.  (See Def.'s Reply at 5-10.)

10

1   less hold that this court lacks jurisdiction.  Indeed, the only

2   Ninth Circuit case defendant cites makes it clear that deference

3   to state commissions is based on *prudential*, not jurisdictional,

4   grounds.  See W. Radio, 530 F.3d at 1200 (requiring an LEC's

5   claim against an ILEC to be brought first before the relevant

6   state commission, but emphasizing that "[t]his requirement . . .

7   is a prudential limitation on adjudication, not a statutory or

8   jurisdictional one.").

9       Moreover, not only does Pac-West fail to establish that the

10  CPUC has exclusive original jurisdiction over PNG's claim, its

11  argument is undermined by Western Radio.  In that case, the Ninth

12  Circuit considered whether 47 U.S.C. § 207 afforded a LEC a

13  private cause of action in federal court against an ILEC to

14  enforce the good faith negotiation requirements of § 251 and

15  § 252.  W. Radio, 530 F.3d at 1196.  The Ninth Circuit held that

16  any finality or exhaustion requirement under the Act "[did] not

17  affect the subject matter jurisdiction of the district court in

18  this case," and concluded that the district court had general

19  federal question jurisdiction under 28 U.S.C. § 1331.  Id. at

20  1193.

21      At oral argument, defendant's counsel attempted to

22  distinguish Western Radio, which involved ILEC obligations under

23  § 252, from the instant case which involves only LECs.  Counsel

24  characterized the precise issue here--whether a federal district

25  court has original jurisdiction over a dispute concerning an

26  alleged interconnection agreement implementing LEC obligations

27  under § 251 of the Act--as an issue of first impression.

28  However, while unlike Western Radio no party here is an ILEC,

1 thus rendering § 252 inapplicable, defendant fails to cite any

2 precedential authority to establish that such a distinction

3 somehow deprives the court of subject matter jurisdiction.  In

4 fact, the Ninth Circuit has expressly held that "there is nothing

5 in the [Telecommunications] Act that limits federal question

6 jurisdiction under 28 U.S.C. § 1331."  Pac. Bell v. Pac-West

7 Telecomm, Inc., 325 F.3d 1114, 1119 (9th Cir. 2003).

8      Here, PNG adequately alleges federal question jurisdiction

9 under 28 U.S.C. § 1331 and 47 U.S.C. §§ 201 and 207, as well as

10 diversity jurisdiction under 28 U.S.C. § 1332.  (Compl. ¶ 2, 10.)

11 Contrary to defendant's assertions, nothing in the Act or the

12 caselaw precludes the court from exercising subject matter

13 jurisdiction.

14 **II.  Primary Jurisdiction**

15      The prudential considerations Pac-West raises, however, are

16 relevant to its contention that the court should decline to

17 exercise jurisdiction over this matter in favor of proceeding

18 first to the CPUC.  (Defs.' Mem. at 7-10.)

19      "Primary jurisdiction is not a doctrine that implicates the

20 subject matter jurisdiction of the federal courts."  Syntek

21 Semiconductor Co., Ltd. v. Microchip Tech. Inc., 307 F.3d 775,

22 780 (9th Cir. 2002).  "Rather, it is a prudential doctrine under

23 which courts may, under appropriate circumstances, determine that

24 the initial decisionmaking responsibility should be performed by

25 the relevant agency rather than the courts."  Id.  Primary

26 jurisdiction may apply where "a court determines that an

27 otherwise cognizable claim implicates technical and policy

28 questions that should be addressed in the first instance by the

12

1   agency with regulatory authority over the relevant industry

2   rather than by the judicial branch."   Clark v. Time Warner Cable,

3   523 F.3d 1110, 1114 (9th Cir. 2008).

4       The application of the doctrine is within the court's

5   discretion and is appropriate where a case presents "(1) the need

6   to resolve an issue that (2) has been placed by Congress within

7   the jurisdiction of an administrative body having regulatory

8   authority (3) pursuant to a statute that subjects an industry or

9   activity to a comprehensive regulatory authority that (4)

10  requires expertise or uniformity in administration."   Syntek, 307

11  F.3d at 781.

12      In Western Radio, the Ninth Circuit considered the

13  applicability of primary jurisdiction to a claim brought by an

14  LEC against an ILEC for alleged failure to negotiate in good

15  faith pursuant to the requirements of § 251 and § 252.   530 F.3d

16  at 1200.   The plaintiff LEC had filed a petition with the Oregon

17  Public Utilities Commission ("PUC") seeking arbitration of its

18  efforts to negotiate an interconnection agreement with an ILEC.

19  Id. at 1189.   When an arbitrator found in the defendant's favor

20  on most issues and directed the parties to submit an

21  interconnection agreement consistent with his decision to the PUC

22  for approval, the plaintiff refused to sign the agreement

23  prepared by the defendant and filed suit in federal court.   Id.

24      Applying the factors set forth in Clark, the Ninth Circuit

25  found that the doctrine of primary jurisdiction was "not a

26  perfect fit" for the Telecommunications Act.   Id. at 1200.   The

27  court observed that "the agency with 'regulatory authority' in

28  this context, in the sense of having the authority to promulgate

1  substantive regulations, is the F.C.C., not the state

2  commissions," and noted that the Ninth Circuit had previously

3  questioned whether primary jurisdiction doctrine permits a case

4  to be referred to a state agency rather than a federal agency

5  (citing Cost Management Services, Inc. v. Washington Natural Gas

6  Co., 99 F.3d 937, 949 n.12 (9th Cir. 1996)).   Id.

7      Nonetheless, the Western Radio court found that while "the

8  established contours" of primary jurisdiction doctrine "[did] not

9  quite apply, the basic concerns" underlying the doctrine were

10 applicable, and thus, that the "only sensible conclusion" in the

11 case was to require the plaintiff's claim to be brought first to

12 the state commission.   Id.   The court reasoned that (1) "the

13 federal statutory scheme specifically grants authority to a state

14 agency to interpret and enforce the provisions of §§ 251 and

15 252"; (2) the policy consideration of relying on agency expertise

16 supported deference because the PUC had already dealt with the

17 issues, having arbitrated the interconnection agreement and

18 issued an order; (3) failing to require the plaintiff to await an

19 agency determination would produce "an extremely inefficient

20 bypass of an administrative remedy"; (4) requiring the plaintiff

21 to await an agency decision was consistent with the intent of §

22 251 and § 252; and (5) deference was "consistent with the general

23 principle that we attempt to strike a balance between the rights

24 of parties to bring their private causes of action in federal

25 court and a statutory scheme providing an alternative means of

26 resolution before an agency."   Id. at 1200-02 (internal

27 quotations and citations omitted).

28 ///

1   Applying the prudential considerations elaborated in <u>Western</u>

2  <u>Radio</u> to the instant case, the court finds it appropriate to

3  defer to the CPUC.  Like <u>Western Radio</u>, this case allegedly

4  concerns interpretation of LEC obligations under § 251, and the

5  statutory scheme specifically grants state commissions the

6  authority to interpret § 251.  <u>See</u> <u>W. Radio</u>, 530 F.3d at 1200.

7  Furthermore, the CPUC has expertise in resolving interconnection

8  disputes and in the highly technical field of telecommunications,

9  an area beyond the ordinary experience of district courts.  <u>See</u>

10 <u>Rural Telephone Serv. v. Alltel Commc'ns, Inc.</u>, No. 08-2052-

11 JWL/JPO, 2008 WL 2169444, *6 (D. Kan. May 23, 2008).  Morever, as

12 the issues raised in this case are already pending before the

13 CPUC, deference would avoid "an extremely inefficient bypass of

14 an administrative remedy."  <u>W. Radio</u>, 530 F.3d at 1201 (internal

15 quotations omitted).

16   The court finds the case of <u>Rural Telephone Services v.</u>

17 <u>Alltel Communications</u> to be instructive here.  <u>Alltel</u> concerned

18 claims for breach of contract, quantum meruit, and unjust

19 enrichment arising out of a dispute over the alleged breach of an

20 interconnection agreement.  2008 WL 2169444 at *1.  The <u>Alltel</u>

21 court found that "the parties' dispute [was] permeated with

22 issues concerning intercarrier compensation obligations that are

23 not within the conventional experience of judges," including

24 whether the agreement between the parties was an interconnection

25 agreement, whether the dispute was within a state commission's

26 jurisdiction, and whether or not the plaintiff was entitled to

27 compensation pursuant to the agreement between the parties.  <u>Id.</u>

28 at *6.  All these issues are similarly present in the instant

15

1   case.   The Alltel court concluded that "the most prudent course

2   of action [would be] to stay further action on [the plaintiff's]

3   claims in this case pending resolution of the issues that can and

4   should be determined by [the state commission] in the first

5   instance."   Id. at *7.   The court finds the Alltel court's

6   reasoning persuasive here.

7        Finally, plaintiff also suggests that the CPUC may not

8   afford it adequate relief because this billing dispute involves

9   multiple states.   (See Pl.'s Opp. at 3-4.)   This assertion, both

10  in plaintiff's opposition and during oral argument, is jejune and

11  lacking sufficient detail or any authority for the court to

12  evaluate its merits.   Furthermore, defendant disputes plaintiff's

13  assertion, arguing that the CPUC can exercise jurisdiction over

14  interstate disputes.[3]   (Def.'s Reply at 9.)   In light of the

15  technical complexity of this case, where the parties dispute the

16  nature of the MSA and the services provided pursuant to that

17  agreement, the court finds that the CPUC is best situated to

18  determine in the first instance whether and to what extent it has

19  the authority to resolve the issues raised.   Accordingly, the

20  court finds that the prudential considerations articulated in

21  Western Radio and Alltel Communications, on balance, support

22  deference to the CPUC.

23       Where a court defers to an administrative agency under the

24  primary jurisdiction doctrine, the court "has discretion either

25  _____

26      [3]      Indeed, the Ninth Circuit's decision in Pac. Bell v.
    Pac-West Telecomm., Inc., 325 F.3d at 1126 provides support for
27  defendant's position.   There, the court recognized that the
    Telecommunications Act of 1996 "granted the state commissions
28  limited defined authority over interstate traffic under §§ 251
    and 252 of the Act."   Id.

16

1  to retain jurisdiction or, if the parties would not be unfairly

2  disadvantaged, to dismiss the case without prejudice." Reiter v.

3  Cooper, 507 U.S. 258, 268-69 (1993).  Here, the court denies

4  defendant's motion to dismiss pursuant to Rule 12(b)(1), finding

5  that it has subject matter jurisdiction, but will stay the case

6  pending disposition of the issues before the CPUC.  Because

7  prudential considerations lead the court to defer to the CPUC,

8  the court does not reach Pac-West's abstention or Rule 12(b)(6)

9  arguments.

10                          **CONCLUSION**

11      For the foregoing reasons, defendant's motion to dismiss

12  plaintiff's complaint is DENIED.  However, the court will stay

13  this case while the parties present the issues raised herein to

14  the CPUC for determination.  The Clerk of the Court is directed

15  to enter a STAY of this case pending further order of the court.

16      The court directs the parties to file a joint status

17  conference statement within 30 days of any disposition by the

18  CPUC.

19      IT IS SO ORDERED.

20  DATED: August 11, 2010

21                              _____

22                              FRANK C. DAMRELL, JR.
                                UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

                                17